IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES MILLER,

        Plaintiff,

   v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

CV-05-331-CO

FINDINGS AND
RECOMMENDATION

COONEY, Magistrate Judge:

## **BACKGROUND**

Plaintiff James Milller (Miller) brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and supplemental security income (SSI)

1 - FINDINGS AND RECOMMENDATION

under Title XVI of the Act. 42 U.S.C. §§ 401-33, 1381-83f. This court has jurisdiction under 42 U.S.C. § 405(g).

Miller applied for benefits on July 30, 2002, alleging disability beginning November 26, 2000[1], due to human immunodeficiency virus (HIV); affective disorder, pain, and cognitive disorder; diarrhea; diabetes; and peripheral neuropathy. Born in August 1954, Miller was 49 years old at the time the administrative law judge's (ALJ) final decision issued on October 8, 2004. He has a high school education and approximately one semester of college. Miller's past work was as a street sweeper, keno writer, hotel manager, and caregiver. He last worked in November, 2000 as a caregiver for his mother.

On appeal to this court Miller contends the ALJ erred by failing to: (1) properly assess whether Miller meets or equals a listed impairment, at step three; (2) provide legally sufficient reasons for rejecting his subjective reports; (3) provide legally sufficient reasons for rejecting the opinions of Dr. Condon and Dr. Lamb; (4) provide legally sufficient reasons to reject lay witness testimony; and (5) meet his burden, at step five, of showing Miller can perform other work existing in significant numbers in the national economy.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by

[1] Miller's date late insured for DIB purposes was March 31, 2004. A claimant seeking benefits under Title II must show that he became disabled on or before his insured status expired.

reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

**DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512. Each step is potentially dispositive.

3 - FINDINGS AND RECOMMENDATION

Here, at step one the ALJ found that Miller had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found that Miller had the following impairments, considered "severe" within the meaning of the regulations: HIV, affective disorder, and diabetes. See 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three the ALJ found Miller's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Miller had the residual functional capacity (RFC) to perform at the light exertional level limited by: the need to have the option to sit or stand as necessary; only occasional bending; the need to avoid hazards, heights, dangerous machinery, extremes of temperature, and concentrated exposure to dust, fumes and gases; and, only simple tasks that do not have more than three instructional sequences each. See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Miller could not return to his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Miller could perform other work existing in significant numbers in the national economy, such as small assembly worker and package inspector. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Accordingly, the ALJ found Miller was not disabled.

## DISCUSSION

**I.    The ALJ failed to provide legally sufficient reasons for rejecting Miller's subjective complaints.**

Miller contends the ALJ failed to cite clear and convincing reasons for rejecting his testimony that he has diarrhea three or four times a week and vomits daily on account of HIV complications, has memory loss, daily headaches and monthly migraines, has been depressed for three or four years, has chest pain and bronchitis once a month, is always fatigued, and experiences intermittent swelling of the lower extremitites due to diabetes.  I concur.

The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, once a claimant establishes the existence of an impairment and a causal relationship between the impairment and some level of symptoms, the ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's subjective claims.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595 (9th Cir. 1999); see also Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating

5 - FINDINGS AND RECOMMENDATION

factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ rejected Miller's complaints chiefly because he concluded that they were not supported by objective medical evidence.  Specifically, with respect to Miller's complaints of fatigue and multiple bouts of diarrhea each week the ALJ wrote, "the claimant typically weighs 235 pounds, which supports that he does not have any wasting or malnutrition from his HIV + status and diarrhea that could cause disabling fatigue."  Yet, the medical record establishes that Miller has struggled with chronic diarrhea beginning February, 2003, ongoing in February, 2004, and continuing into July, 2004 by Miller's hearing testimony.  Although the record does not contain evidence of this condition at the time of Miller's alleged onset date, the ALJ nevertheless failed to credit the evidence showing its persistence since February, 2003.  As Miller prudently points out, the combination of depression, diabetes, obesity and HIV infection could cause disabling fatigue independent of wasting or malnutrition.  Thus, I find the ALJ's reason for rejecting Miller's complaint of fatigue is not based on substantial evidence.

One of the causes of chronic diarrhea and fever in HIV infected persons is cryptosporidium infection, or a small intestine parasite that causes infection in immunocompromised systems.  Miller was diagnosed with this condition in February, 2003 and started on antibiotics.  The ALJ found that it was "effectively cured according to a June 25, 2003 treatment report."  That report, however, does not state that Miller's cryptosporidium infection was cured, it states "GI symptoms are unchanged from 2 weeks ago after starting antibiotics.

6 - FINDINGS AND RECOMMENDATION

Immodium 2-3 capsules every day provide no change in [symptoms]." It hardly needs stating that the ALJ's inapposite reading of the record cannot serve to discredit Miller.

The ALJ's third and final reason for rejecting Miller's complaint of chronic diarrhea was Miller's March 18, 2004 gastroscopy, which the ALJ found "only revealed gastritis due to stomach upset and inflammation, as a result of bile that had backed up." Indeed, the physician who performed the procedure "wonder[ed] about pathologic duodenal gastric reflux" and whether Miller "would benefit from a pro-motility agent." Yet it is unclear how the finding that Miller's stomach problems were caused by a back-up of bile refutes his contemporaneous claims of chronic diarrhea because the report does not address diarrhea. Accordingly, I find this reason it not based on substantial evidence.

The ALJ rejected Miller's complaint of periodic swelling of the lower extremities because Miller testified he could walk "two or three blocks" and because his medical provider "instructed him to use pressure stockings for relief." I fail to see the inconsistency between Miller's complaint and these two facts. His medical records memorialize Miller's ongoing complaints of decreased sensation and swelling in his lower extremities, difficulty wearing shoes, and inability to exercise as a result of these issues. That very little can be done for this condition is not a clear and convincing reason to disbelieve that Miller suffers from it.

Regarding Miller's diabetes the ALJ found that Miller's normal vision was "untypical of severe disabling uncontrolled diabetes." The ALJ also found that Miller's "blood sugars are in the 200's [but he stated] on August 26, 2003 that he was feeling good." Yet in that same chart note Miller complained of continued decreased sensation in his lower extremities, and increased

7 - FINDINGS AND RECOMMENDATION

symptoms of lethargy and inability to sleep. In any event, Miller did not allege vision problems or that his diabetes was uncontrolled. He alleged severe diabetes that principally causes him trouble with his legs and feet, and fatigue. The ALJ agreed, at step two, that the medical evidence did support a finding that diabetes was one of Miller's severe conditions. Thus, the ALJ's rejection of Miller's testimony about the impact of his diabetes is inapposite, and neither clear nor convincing.

Next, the ALJ wrote that although Miller "alleges bronchitis and chest pain, he has had normal cardiac and pulmonary function test results, a normal chest CT, and all were conducted around the time of his alleged onset date of November 2000." Miller argues that while he did have a normal CT on November 14, 2000, a CT performed on April 11, 2000 showed ischemia involving the anterior and inferior walls of the left ventricle. Although it was reasonable for the ALJ to defer to the CT result contemporaneous with Miller's alleged onset of disability, this test alone was not a convincing reason to discredit Miller's reports of labored breathing and chest pain given the medical evidence substantiating that complaint. Miller began complaining of breathing difficulty and chest pain in February, 1999, when he went to the emergency room in Las Vegas after being accidentally exposed to pepper spray at his janitorial job. His symptoms, which were characterized as "consistent with emphysema" still hadn't cleared up in December, 1999, after he moved to La Grande, Oregon. David Allen, M.D., Ph.D., recommended testing for HIV and Hepatitis C "because of the fatigability and vague symptoms and social history." After he tested positive for HIV infection, and soon thereafter for Type 2 Diabetes, Miller's pulmonary symptoms were attributed to these problems. Thus, the fact that Miller's chest pain was due to

non-cardiac causes does not diminish his subjective complaints, which are substantiated by the record.

The ALJ incorrectly concluded that because Miller's CD4[2] count was "three times above the listing threshold of 200 which could predispose him to disease or infection in February of 2000" his HIV infection could not account for his alleged symptoms at that time. Yet substantial evidence in the record indicates that many of Miller's symptoms prior to being diagnosed with HIV are, indeed, attributable to HIV infection. As previously noted, the vagueness and persistence of many of his symptoms was the reason HIV screening was conducted in the first place. Furthermore, in 2003 Miller's CD4 count did fall below 200, and it was around this time he developed cryptosporidium infection. Thus, the ALJ's reliance on Miller's CD4 count to reject his claim that some of his symptoms are attributable to HIV is not based on substantial evidence.

Finally, the ALJ discredited Miller's complaints of disabling depression because chart notes from as early as October, 2002, indicate he responded to Zoloft, and by February, 2004, Miller answered "no" to a question on a computer-generated chart note asking whether he had "been sad or depressed much of the time in the past year." Unfortunately there is no accompanying narrative, but Miller's other complaints that day – of increasing stomach problems, diarrhea two to three times per week, and bilateral foot and ankle swelling for the past two months – render this answer suspect. In any event, it is not a convincing reason to disbelieve his testimony about the role depression plays in his life. Miller testified that he quit working in November, 2000 due to depression associated with his mother's death and being diagnosed with

---

[2] The number of helper T-lymphocytes in a cubic millimeter of blood.

9 - FINDINGS AND RECOMMENDATION

HIV and diabetes.  The ALJ called this a "situational problem...not necessarily due to documented mental illness."  Yet, the fact Miller's depression is situational, and not caused by mental illness, is an invalid reason for rejecting Miller's testimony that his situation causes him to socially isolate, take two naps everyday, neglect his hygiene and housekeeping duties, and find very little joy in life.  Accordingly, this was not a clear and convincing reason.

In sum, I find the ALJ's reasons for rejecting Miller's subjective complaints to be legally insufficient and not supported by substantial evidence.

## II.  The ALJ failed to provide legally sufficient reasons for rejecting lay witness testimony.

The ALJ is required to account for lay witness testimony, and if he rejects it, to provide germane reasons for doing so.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  However, the ALJ is not required to discuss non-probative evidence.  See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In the instant case, the Commissioner acknowledges that the ALJ did not address the lay witness testimony of Miller's sister, Sandra Clem, but argues it was "non-probative" of disability.  I disagree.

On October 3, 2002, Ms. Clem competed a third-party disability questionnaire on behalf of Miller.  She reported that she sees him everyday, that he lives alone, and that other family members do not have much to do with him because he is gay and he has AIDS.  Ms. Clem said Miller is uncomfortable around people, takes offense easily, and that he gets very uptight and sometimes offensive and loud around store clerks, doctors, nurses, mental health workers,

government workers and neighbors. Not surprisingly, she reported that Miller has no friends and does not participate in social activities. According to Ms. Clem, Miller goes to the grocery market two or three times a week, but does not often do other types of shopping. He also prepares his meals but does not clean up after himself. He does his laundry once a week, but cleans house only about once per month or when Ms. Clem asks him to. Ms. Clem stated that Miller bathes and shaves once a week and there are days when Miller does not even get dressed unless Ms. Clem calls him and asks him to do something.

Ms. Clem described Miller's typical day as staying home in his pajamas, lying on the couch and watching TV, and otherwise being inactive unless Ms. Clem puts him to work in the yard. She said Miller naps a lot during the day. She opined that Miller has "no push or drive" and that she had to set up his living situation and pay for everything. Finally, Ms. Clem stated that she encouraged Miller to apply for disability because it is getting hard for her to support him.

Rather than being non-probative of disability, Ms. Clems testimony corroborates Miller's subjective complaints of fatigue and depression, and adds new dimension to his restrictions in social functioning and activities of daily living.

### III. The ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of Dr. Condon, though he properly rejected the opinion of Dr. Lamb.

The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is

not contradicted by another doctor, and "specific and legitimate" reasons when it is.  See <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600-601 (9th Cir. 1999).

    A.    **Dr. Condon**

Miller contends the ALJ misinterpreted and wrongly rejected the findings and opinions of psychologist Stephen R. Condon, Ph.D., who evaluated Miller on October 1, 2002.  The ALJ wrote that Dr. Condon's findings

> reflect that the claimant has an *average to high average intelligent quotient* (FS 108), *mild depression*, and *moderate impairment to attention and delayed memory*, but *no impairment in current memory*.  The claimant [sic] when counseled about his medical condition and complex treatment for HIV was fully aware and able to understand instruction while he was being treated for depression in January of 2003.
>                                   ***
> It is found that the claimant's participation though considered adequate by Dr. Condon is questionable due to his partial credibility, in light of his many complaints and symptoms without corresponding objective clinical diagnostic support to back up his allegations.  *Dr. Condon also considered the claimant's physical impairments as Axis I in opining the claimant's GAF of 52*, which does not support attention and memory limitation due to organic impairment, and would therefor[e] result in less severe limitation due to his mental impairments.

(emphasis added).

While the ALJ correctly restated that Miller's I.Q. score range is classified as "average to high average" according to Dr. Condon's report, his scores on the Repeatable Battery for the Assessment of Neuropsychological Status did not reflect moderate impairment to attention and delayed memory, as the ALJ stated.  In fact, Dr. Condon assessed scores of 68 on attention and delayed memory tests.  His report indicates that scores below 70 on these tests "are indicative of significantly impaired functioning."  Dr. Condon concluded that Miller's "total scale score of 70 is equivalent to a percentile rank of 2," representing "very low to borderline neuropsychological

functioning."  As a result, Dr. Condon diagnosed "Rule Out Cognitive Disorder Not Otherwise Specified.  Under the regulations, "significant impaired functioning" corresponds more closely to a "marked" impairment, or one that is more than moderate, but less than extreme.  Thus, the ALJ's finding that Miller had only a "moderate" impairment to attention and delayed memory was not based on substantial evidence.

In addition to misinterpreting this finding, the ALJ appears to have entirely overlooked Dr. Condon's assessment of a high somatization score "likely associated with [Miller's] concern about serious medical problems."  The ALJ found no objective clinical diagnostic support for Miller's complaints, yet Dr. Condon stated that Miller's test results endorsed areas such as depression, anxiety, obsessive-compulsive symptoms, and somatization, and that his scores were consistent with the diagnosis of mood disorder with depressed mood and pain disorder associated with general medical condition.

The ALJ also discredited Dr. Condon's Global Assessment of Functioning (GAF) score of 52, because Dr. Condon "considered the claimant's physical impairments as Axis I in opining the claimant's GAF of 52, which does not support attention and memory limitation due to organic impairment, and would therefor[e] result in less severe limitation due to his mental impairments."  The GAF scale is a means of reporting the clinician's judgment of the individual's overall level of functioning on a scale of 1 to 100.  Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 1994)(DSM-IV), 30-32.  The ALJ is correct that the clinician is not supposed to take into consideration "impairment in functioning due to physical (or environmental) limitations" when making this assessment.  Id. at 30.  He is also correct that Dr. Condon

improperly considered Miller's pain disorder, which as "associated with general medical conditions" under Axis I, rather than Axis III. However, even if Dr. Condon's GAF score cannot be relied upon, this does not change Dr. Condon's reliable evaluation of Miller's attention and memory limitations, discussed above. Accordingly, I find the ALJ's reasoning in this regard is not based on substantial evidence.

In sum, the ALJ's reasons for discrediting Dr. Condon's opinion were not based on substantial evidence and are therefore legally insufficient.

### B. Dr. Lamb

According to Miller, the ALJ wrongly rejected the opinion of Eric Lamb, M.D., who filled out a physical capacities evaluation for Miller on March 13, 2003. Dr. Lamb opined that Miller could sit for 1 hour at a time, stand for 30 minutes at a time, and walk for 45 minutes at a time. Dr. Lamb also found that in an 8-hour day Miller could sit for 3 hours total, stand for 2 hours total, and walk for 1 hour total, and thus could not work a full 8-hour day. He indicated that Miller's impairments were likely to produce "good days" and "bad days" and that his condition would likely cause him to have frequent, unpredictable absences from work. Dr. Lamb estimated that Miller could only occasionally carry up to 25 pounds, and that he was restricted from various other exposures, such as changes in temperature and working in unprotected heights. Finally, Dr. Lamb opined that Miller would not be able to work at a consistent pace without an unreasonable number of rest periods, and that he would not be able to sustain even sedentary activity 40 hours per week.

14 - FINDINGS AND RECOMMENDATION

The ALJ dismissed Dr. Lamb's assessment for several reasons. First, he stated that Dr. Lamb's opinion was only relevant for March 13, 2003, because Miller's CD4 count was at its lowest point on this date, just before Miller began anti-viral therapy. Miller argues that the ALJ was wrong to consider his CD4 count in evaluating Dr. Lamb's opinion because under the Listings for HIV, Section 14.00D3a(iii) indicates that in determining whether an individual has HIV "a reduced CD4 count alone does not establish a definitive diagnosis of HIV infection, or document the severity or functional effects of HIV infection." I disagree with Miller because the criteria for determining whether an impairment meets a Listed Impairment at step three is not applicable to the evaluation of a doctor's opinion. Nevertheless, I still find the ALJ's reasoning inapposite as there is no indication Dr. Lamb's limited his evaluation to just those functional limitations caused by Miller's HIV infection. As is well documented by now, Miller has many other problems besides those caused by HIV infection, and in any event, some of the complications linked to HIV infection continued after Miller began anti-viral therapy. Thus, substantial evidence does not support the ALJ's reasoning on this point.

The ALJ also found Dr. Lamb's opinion was not consistent with the "substantial opinion of record." Since it is unclear what the "substantial opinion of record" refers to, I find this was not a clear or convincing reason to reject Dr. Lamb.

The ALJ also afforded Dr. Lamb's opinion less weight because it was not supported by objective clinical findings. This was the only reasonable basis upon which to doubt Dr. Lamb. Nevertheless, I still find that it was unreasonable for the ALJ to dismiss Dr. Lamb's opinion out of hand. Even without clinical findings to back it up, Dr. Lamb's assessment was still persuasive

15 - FINDINGS AND RECOMMENDATION

insofar as it generally supports Dr. Condon's assessment of Miller's limitations, and is consistent with Miller's subjective complaints and Ms. Clem's lay witness testimony.

### IV.     Miller meets the criteria of Listed Impairment 14.08C1 and 14.08N.

Miller contends that once the wrongly rejected testimony and medical opinions are credited as true, they establish that he meets the criteria for Listing 14.08C1 or 14.08N, so as to automatically entitle him to benefits at step three.

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion "as a matter of law."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)(citing Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir.1989). Similarly, where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony.  Lester, 81 F.3d at 834 (citing Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988) (Varney II )).  Rather, that testimony is also credited as a matter of law.

In the instant case, after crediting the rejected opinions of Dr. Condon and Dr. Lamb, and crediting Miller's subjective complaints and the testimony of his sister, I find substantial evidence in support of the conclusion that Miller meets the criteria for Listed Impairment 14.08C1 and, alternatively, 14.08N.

To show he meets one of the Listed Impairments under Section 14.08 (Human Immunodeficiency Virus), a claimant must first show documentation of HIV infection based on an accepted test.  There is no dispute that Miller meets this criteria.

Next, the claimant must show that he has one of several manifestations of HIV infection considered so severe as to automatically constitute disability. The infection listed under 14.08C1 is "cryptosporidiosis...with diarrhea lasting for 1 month or longer." Indeed, substantial evidence supports finding that Miller had cyptosporidiosis beginning in February, 2003, and lasting for a continuous period of at least 12 months. Thus, under 14.08C1, Miller is entitled to benefits beginning February, 2003, onward.

Under Listed Impairment 14.08(N), a claimant must show repeated[3] manifestations of HIV infection[4] resulting in significant, documented symptoms or signs[5], and one of the following at the marked level[6]: (1) restriction in activities of daily living; (2) difficulties in maintaining social functioning, or; (3) difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

---

[3] "Repeated" means the condition occurs on average three times a year, or once every 4 months, each time lasting 2 weeks or more. If the condition does not last for 2 weeks or more, it will still be considered "repeated" if it occurs substantially more frequently than 3 times in a year or once every 4 months. See 20 C.F.R. Part 404, Subpt. P, App. 1, 14.00D8.

[4] Examples of "manifestations" of HIV infection include those listed as 14.08A-M, but without the requisite findings.

[5] Examples of "symptoms or signs" are fatigue, fever, malaise, weight loss, pain, or night sweats.

[6] As used here, "marked" means more than moderate, but less than extreme. It does not represent a quantitative measure of the individual's ability to do an activity for a certain percentage of the time. A marked limitation may be present when several activities or functions are impaired or even when only one is impaired. However an individual need not be totally precluded from performing an activity to have a marked limitation. See 20 C.F.R. Part 404, Subpt. P, App. 1, 14.00D8.

Miller contends he has three different repeated manifestations of HIV infection: cryptosporidiosis (14.08C1), diarrhea (14.08J), and peripheral neuropathy (14.08H2). I agree that Miller has shown he suffered from repeated cryptosporidiosis, beginning February, 2003, with attendant symptoms or signs of fatigue. Thus, I need not discuss his other alleged manifestations. Finally, after crediting Dr. Condon's opinion, together with testimonial evidence and Dr. Lamb's concurring limitations assessment, I find Miller is markedly impaired in all three areas listed under 14.08N, and particularly in the ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Since Dr. Condon's assessment was made in October, 2002, but Miller did not develop cryptosporidiosis until February, 2003, under 14.08N Miller is entitled to benefits beginning February, 2003, onward.

## RECOMMENDATION

Based on the foregoing, the Commissioner's final decision should be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation of benefits.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to <u>de novo</u> consideration of the factual issues and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _21_ day of March, 2006

                                                  ____/s/_____
                                                John P. Cooney
                                                United States Magistrate Judge